## Case No. 11,209.

### PLASTIC SLATE–ROOFING JOINT-STOCK CO. et al. v. MOORE.

[1 Holmes, 167.] [1]

Circuit Court, D. Rhode Island. June, 1872.

PATENTS—VALIDITY OF REISSUE—ANTICIPATION—IMPROVED ROOFING COMPOSITION.

1. The reissued patent granted to William L. Potter, July 16, 1867, for an "improved composition for roofing and other purposes," as limited by disclaimer of May 10, 1871, *held* valid for the use for roofing purposes of pulverized argillaceous rock mixed with coal-tar to the consistency of plasterer's mortar.

2. An invention consisting in the use for a roofing, of a mixture of pulverized argillaceous rock and coal-tar, of the consistency of plasterer's mortar, hardening on exposure into a solid slate roof, is not anticipated by prior use of thin mixtures of pulverized slaty material and oil or coal-tar, as paints for the sides and roofs of buildings.

In equity.

James H. Parsons and James A. Hudson, for complainants.

B. F. Thurston, for defendant.

SHEPLEY, Circuit Judge. This is a bill in equity, brought by the complainants, the Plastic Slate-Roofing Company as owner, and Edson A. Sammis, its licensee for the state of Rhode Island, of the rights under the reissued letters-patent, issued on the sixteenth day of July, 1867 [No. 2,684], to William L. Potter, and assigned to the complainants, for "an improved composition for roofing and other purposes," against the defendant, John A. Moore.[2]

Pendente lite the complainants filed a disclaimer in the office of the commissioner of patents, whereby they disclaim all combinations of matters, and the uses thereof, mentioned in the reissued Potter patent, save only the combination or mixture of pulverized slate or argillaceous rock with coal-tar, otherwise known as gas-tar, for roofing purposes. Complainants' title is proved, and is not in question.

Defendant's answer alleges knowledge and use of the composition claimed as the invention of Potter prior to the date of his letters-patent, by many different persons named in the answers; and especially alleges that the invention claimed as Potter's was substantially described in letters-patent granted by the United States to Abraham Straub on the seventeenth day of November, 1863. The answer also denies infringement, and admits that the defendant is, and has been, engaged "in the business of grinding up stone to mix with other materials for roofing and other purposes;" and alleges that such composition is made by him in accordance with instructions contained in letters-patent granted to John A. Moore, the defendant, on the twenty-first day of July, 1868, "for improved roofing cement."

As the reissued patent describes the object of the invention to furnish "an improved composition for roofing and similar uses (all other uses being covered by the disclaimer), which shall be of such a nature that when exposed to solar or artificial heat it will harden into a solid body of slate," and consists in the use of slate or argillaceous rock mixed with coal-tar or gas-tar for roofing purposes, it becomes necessary to define the meaning of the terms "slate or argillaceous rock" as used in the patent, and stated in the patent to be also called "schist and shale."

The words "slate," "slate-rock," "schist," and "shale," have both a technical and also a more general and a popular meaning. Technically they refer exclusively to the structural formation of the rock, without any reference to its chemical constituents. In the popular and general sense they refer to rocks containing clay, argillaceous rocks, of whatever structural formation,—the argillaceous quality being the characteristic, without regard to structural formation. "Slate-rock" is a term universally used by geologists and practical quarrymen to indicate an argillaceous rock, or a rock in which alumina or the silicate (clay) is a characteristic constituent. Argillaceous rocks are well known generally by the name "slate-rocks," as rocks containing a large amount of argillaceous matter are mostly found laminated. These words are undoubtedly used in the patent in their general sense, as indicating argillaceous rock of any textural formation. The patentee states in the specification that he takes "what is generally known as slate or argillaceous rock, also called schist and shale;" that "it is not necessary that it should be slaty in its structure, as that which breaks in cubes, or fractures irregularly, will answer the purpose equally as well, provided it is argillaceous." He also says, "It is necessary that the rock should possess this peculiarity, in order to produce the desired result." This language of the patentee clearly shows that the rocky material of the compound covered by the patent is simply pulverized argillaceous rock, whether found in slates, shales, or other form.

The main ground of defense relied upon by the defendant, upon the question of novelty of invention, is in the allegation that the invention of Potter was substantially described in letters-patent issued by the United States to Abraham Straub on the seventeenth day of November, 1863.

Professor Hedrick, who was the chief examiner in the patent office, who examined and allowed both the Potter and the Straub patents, states clearly the distinction between the two inventions. He says the thing that was new with Straub, was to combine a species of limestone, known as shell or shale rock, in powder with coal-tar asphaltum, sometimes known as artificial asphaltum, which is produced by boiling down coal-tar until it

1 [Reported by Jabez S. Holmes, Esq., and here reprinted by permission.]

2 [The original letters patent were granted Feb. 1, 1865, No. 46,495.]

becomes hard and brittle, resembling natural asphaltum. The combination was effected by heat; and the compound had to be spread or formed into shape while hot, as it was not plastic when cold. It became hard by cooling. The basis of Potter's invention, he says, is pulverized slate or slate-rock, ordinarily known as clay-slate, and by mineralogists as argillite. Chemically, it is a silicate of alumina; geologically, it belongs to the older formations. This material is ground to a fine powder, and used in combination with coal-tar, oil, or other cementitious material, to form a plastic compound to be used in forming roofs. It may, in a cold state, be applied to the material to be covered, and hardens by exposure to air and heat.

Without recapitulating in detail the evidence of Professor Antisell, and of Marcellus Bailey, which clearly elucidates the distinction between the two patents, it is sufficient to state briefly that the material points of difference between them are these: The Straub patent calls for the use of limestone, calcareous matter, and impliedly excludes argillaceous matter and silex; Potter's patent calls for argillaceous matter, and includes silex. Straub boils coal-tar until he makes artificial asphaltum of it, and stirs into this boiling mass his pulverized limestone, until the desired hardness is obtained by means of heat; Potter mixes his pulverized argillaceous matter with unboiled coal-tar, without any aid of heat. The resultant compounds are different, and the modes of application are not the same. Straub's mixture is applied while the compound is hot; it hardens by mere loss of heat, becoming soft again whenever sufficient heat is absorbed, and hardening again upon its escape. Potter's mixture is applied cold, and it hardens by exposure either to solar or artificial heat.

A general expression used by Straub in his patent, that "any fine-grained rock having a slaty structure may be used," is relied upon by the defendant as showing that he intended to include argillaceous rock; but we think that this expression, taken in connection with the fact as testified to by Professor Hedrick, that Straub's application originally contained the claim for the use of clay also, and was only allowed after he had disclaimed its use, was intended by him rather to show that the calcareous rock which he uses has undergone a change toward a hard and rocky state. But even if clay or argillaceous rock like that described in the Potter patent had been used by Straub, the granting of his patent for a boiled cement would not have anticipated the Potter patent.

Several witnesses examined on behalf of the defendant have testified to the use, anterior to the date of Potter's invention, of mineral paints. Some of these paints appear to have been made from a mixture of a pulverized slate-rock, or rock of a slaty or shaly structure, with oil or viscous materials, and sometimes with coal-tar. The answer to this evidence is found in the fact, apparent upon a careful examination of the testimony, that all such uses were uses of the compound simply as a paint, whether applied to the sides or roofs of buildings. The mixture in all such cases was made thin, and, when applied to the roof, was mixed in the manner described by Boutwell, the most important witness for the defence, who says, he mixed it "about as stiff as we mix paint, and put it on with a brush; and as it got old and leaked I repainted it a good many times in the same way." This is a different compound, and differently applied, from Potter's, which, being mixed to the consistency of plasterer's mortar, forms of itself a permanent roof of stone, hardening by exposure to the elements into a solid body of slate.

On the whole evidence in the cause, in the opinion of the court, since the filing of the disclaimer limiting the claim, as previously stated, the patent may be sustained for the use of argillaceous rock pulverized and mixed with coal-tar to the consistency of plasterer's mortar for roofing purposes. Disregarding the evidence in relation to abandoned experiments and trials which did not result in practical or useful operation, and did not put the public in practical and useful possession of the compound, and throwing aside, as inapplicable to the present posture of the case, the evidence in relation to the use of a compound in some respects similar to Potter's for a paint only, we think Potter is fairly to be considered as entitled to claim to be the first and original inventor of the improved composition for roofing purposes, as described in his claim, as now limited by the disclaimer.

Little need be said on the question of infringement, after what has been already stated, as to the construction of the claim in the Potter patent. The rock which defendant pulverizes and uses, is proved incontestably by the testimony of Professors Stone and Appleton to be an argillaceous rock. This he mixes with coal-tar to the consistency of plasterer's mortar, and applies the mixture to form a permanent roof. His composition for roofing purposes was not merely similar to Potter's, but was correctly described by himself, in his statement to Charles H. Perkins, as "the same thing."

Decree for injunction and account, without costs.